IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION CIVIL ACTION NO.
5:11CV121-RLV

| | | |
|---|---|---|
| JOHNNY GLENN ROTHROCK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Memorandum and Order** |
| | ) | |
| CALDWELL COUNTY/ CALDWELL COUNTY LIBRARY, | ) ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on Defendants' Partial Motion to Dismiss (Doc. 7) and Memorandum in Support (Doc. 8), both filed on October 24, 2011. In response to this motion, pro se Plaintiff Johnny Rothrock filed a Memorandum in Opposition to the Partial Motion to Dismiss (Doc. 12), filed on November 28, 2011. These matters are ripe for disposition.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff began work with Caldwell County and Caldwell County Library (Defendants) on August 4, 2004, as a "Full Time/Part Time Library Assistant." (Doc. 1 at 7.) Plaintiff is a 59 year-old disabled American veteran. (Doc. 1 at 6.) Plaintiff's initial supervisor was Ms. Karen Doll. (*Id*.) At some later point in time, Ms. Sarah Greene (Greene) became Plaintiff's supervisor as the Library Director. (Doc. 1 at 7.) During Plaintiff's time of employment, Plaintiff alleges that he was discriminated against based on the following allegations:

1

- Defendants' termination of Plaintiff was in retaliation for "standing up for what is right and mandated by worker's rights in the workplace." (Doc. 1 at 7.)

- Plaintiff's hours had been cut to three and one half hours per week, with one week off per month. (Doc. 1 at 8.)

- Greene hired numerous younger part-time employees. (*Id*.)

- Greene asked Plaintiff if he had mentioned his children's band while at the front desk and whether he offered to get information for a gentleman outside of the library's resources. (*Id*.)

- Plaintiff received a written reprimand for which there was allegedly no policy or procedure in regards to part-time employees (Doc. 1 at 9.)

- Another employee was not reprimanded for running her dog sitting service out of the library. (Doc. 1 at 9.)

- Plaintiff requested a letter of recommendation from Greene and Greene did not respond. (Doc. 1 at 10.)

- Greene did not respond to Plaintiff's request for accommodation for his medical issue. (Doc. 1 at 11.)

- Plaintiff did not receive information on the applicability of federal regulations to part-time employees from Defendants (Doc. 1 at 12.)

- Greene would not switch anyone's hours for Plaintiff, so he was not able to see his grandchild play ball. (Doc. 1 at 15.)

- A friend of the Director of the library was hired as a part-time employee following the opening of a full-time position. (*Id*.)

- Nina Zanjani, a 26 year-old female, was promoted from head librarian to assistant director of the library (Doc. 1 at 19.)

- Former library director Jim McKee announced that he selected Zanjani as his replacement; however, the County Commissioner opened the position up to the public for outside applications. (Doc. 1 at 20.)

- Plaintiff was humiliated, embarrassed, and on the verge of crying when Debbie Steele said, "I don't want to hear anything about time, fairness, Affirmative Action, or Equal Opportunity this evening, and if you don't like it you can just hit the door." (Doc. 1 at 21.)

- Greene asked Plaintiff to complete a self review form. Plaintiff was the only employee asked to complete the survey. (Doc. 1 at 22.)

- Plaintiff was instructed to stop requesting additional work hours. (Doc. 1 at 23.)

- A full-time employee wore female lacy and sequined gloves; whereas, Plaintiff wore garden gloves to work and was asked not to wear such gloves. (Doc. 1 at 25.)

- Plaintiff was allegedly singled out to take a test on library procedures and protocol (Doc. 1 at 26.)

Plaintiff asserts that the aforementioned discriminatory behavior was in violation of Title VII, the Age Discrimination in Employment Act (ADEA), and the American with Disabilities Act (ADA). Within this statutory framework, Plaintiff seeks relief based upon various claims

and theories, including: retaliatory firing, wrongful discharge, harassment, intentional infliction of emotional distress, hostile work environment, failure to adhere to the Equal Employment Opportunity Commission (EEOC) policies by failing to provide a letter of recommendation, failure to accommodate in violation of the ADA, discriminatory hiring practices, and prohibited practices and work attire. (Doc. 1.)

## **STANDARD OF REVIEW**

Defendants have moved for dismissal based on Rule 12(b)(6). In deciding the motion, factual allegations of the Complaint are taken as true; however, the court is not bound to accept legal conclusions drawn from the facts, unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotation omitted). Although "heightened fact pleading of specifics" is not required for a complaint to survive a motion to dismiss under Rule 12(b)(6), the allegations must provide "enough facts to state a claim to relief that is plausible on its face*." Dell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal should be granted where "it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). While a plaintiff need not forecast sufficient evidence to prove his case as an evidentiary matter, failure to provide allegations to support the necessary elements of a claim warrants dismissal. *See Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 767 (4th Cir. 2003).

## ANALYSIS

**I. Claims for Discrimination under Title VII & the ADEA**

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. §§ 623(a)(1–2). In order to establish a prima facie case of age discrimination under Title VII, Plaintiff must establish the following: (1) Plaintiff is a member of a protected class, (2) Plaintiff suffered an adverse employment action, (3) Plaintiff was performing his job at a level that met the employer's expectations, and (4) Plaintiff was replaced by a substantially younger employee.[1] See e.g., Dugan v. Albemarle Co. Sch. Bd., 293 F.3d 716, 721 (4th Cir. 2002); *McNairn v. Sullivan*, 929 F.2d 974, 977 (4th Cir. 1991); *Spencer v. Byrd*, 917 F.Supp. 368, 373 (1995).

Taking the allegations in the Complaint as true, Plaintiff has failed to allege sufficient facts to satisfy the fourth element of age discrimination. Plaintiff stated in the Complaint that he was 59 years old and considered disabled by Social Security and the Veteran's Administration, which places Plaintiff in a protected class. Element two requires an adverse employment action,

---

[1] Once a plaintiff establishes a prima facie case, the defendants must present a legitimate, non-discriminatory reason for the employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L. Ed.2d 207 (1981). If the defendants meet their burden of production, the presumption raised by the prima facie case is rebutted and "drops from the case". *Id*. at 255. Then the plaintiff bears the ultimate burden of proving that he was the victim of intentional discrimination. *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F. 3d 716, 721 (4th Cir. 2002).

which is an action that affects the employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. Section 2000e-2(a)(1). Examples of employer actions that are adverse include decreasing employee compensation or transferring an employee to a position of less responsibility or pay. *Holland v. Washington Homes Inc.*, 487 F.3d 208,219 (4th Cir. 2007). To be considered adverse, the action must show some direct economic harm suffered by the employee. *Id.* In the present case, Plaintiff's hours were reduced to three and a half hours per week and he only received 20 hours during one pay period, which obviously affected his income, thereby fulfilling element two. (Cmpl. at 12). Plaintiff also alleges that there had never been an issue with the quality or performance of his work during his six year tenure. Therefore we can assume that Plaintiff met the expectations of his supervisor based upon the Complaint, thereby satisfying element three. Finally, Plaintiff alleged in the Complaint that his hours were cut back and given to new younger employees. While the twenty-nine year old that allegedly replaced Plaintiff is certainly considered substantially younger, there are no facts alleged to show that Plaintiff was *replaced* by the younger employee.[2] Although Plaintiff contends that his hours were reduced and spread out among younger employees, this is not sufficient to establish that Plaintiff was replaced. *See Warsh v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 518–19 (4th Cir. 2006) (holding that the plaintiff was not "replaced" when his work was spread out among various employees). The Fourth Circuit does not implement a "flexible analysis" of this element of the prima facie case. Therefore, Plaintiff must allege facts to show that his actual position was filled with a

---

[2] A five year age difference is not considered substantially younger with regards to an age discrimination claim. *Rhymer v. Yokohama*, 106 F.3d 391, 1997 WL 14143 at 3. However, a thirteen year age gap is considered substantial. *See Cramer v. Intelidat Tech.*, 168 F.3d 481, 1998 WL 911735 at 3 (a forty-one year old employee was considered substantially younger than a fifty-four year old employee). In the present case, Plaintiff is fifty-nine and the employee that allegedly took over his hours was twenty-nine; therefore, the other employee would be considered substantially younger.

substantially younger employee after his termination. Plaintiff alleged no such fact in his Complaint. For this reason, the Defendants' Motion to Dismiss the age discrimination claims will be <u>granted</u>.

### II. Hostile Work Environment

To state a claim for hostile work environment, the plaintiff must show that "(1) the harassment was unwelcome; (2) the harassment was based on his age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; (4) there is some basis for imposing liability on the employer." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (citing *Hartsell v. Duplex Prods.,Inc.*, 123 F.3d 766, 772 (4th Cir. 1997)). In order to establish a hostile environment claim, the plaintiff must show that "but for" his age, he would not have been the victim of the alleged discrimination. *Id*. Furthermore, the harassing conduct must be sufficiently severe or pervasive to alter the terms, conditions, or privileges of plaintiff's employment and create an abusive working environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399 (1986). The Supreme Court has explained that a plaintiff seeking to recover on a hostile environment theory must demonstrate that a reasonable person would find the work environment hostile or abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993). There are several factors to consider when determining if the conduct was severe or pervasive: (1) the frequency of the conduct; (2) whether it is physically threatening or a mere offensive utterance; and (3) whether it unreasonably interferes with the plaintiff's job performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S.Ct. 2275 (1998).

In this case, Plaintiff's Complaint is full of conclusory labels regarding "harassment and hostile work environment. However, when those labels are put aside and the factual allegations are considered, there is no indication that any of the incidents complained of were the result of animosity on the part of Defendants towards Plaintiff's age. Again, to establish a hostile environment claim, the defendant must show that "but for" his age, he would not have been the victim of the alleged discrimination. *See Hartsell v. Duplex Prods.*, Inc., 123 F.3d 766, 772 (4th Cir. 1997). Plaintiff's allegations range from being reprimanded for soliciting business during work hours and not receiving "make-up hours when requested, to being singled out to take a performance test. However, Plaintiff has failed to allege any facts suggesting Defendants' conduct was motivated by Plaintiff's age. Defendant never made any derogatory comments about Plaintiff's age, in fact, Plaintiff's age was never mentioned at all. There is simply nothing about Defendant's conduct to suggest that it was based on this factor. Ultimately, the allegations center on personal grievances and claims that Plaintiff was treated unfairly in a variety of situations, but Plaintiff has failed to present any evidence suggesting Defendants' conduct was motivated by age.[3]

Furthermore, Plaintiff has not alleged sufficient facts to establish that the discriminatory behavior was sufficiently severe or pervasive. The discriminatory behavior is sufficiently severe or pervasive when it creates a discriminatorily hostile or abusive working environment. Whether an environment is "hostile" or "abusive" can only be determined by looking at all the circumstances, which may include the frequency and severity of the conduct, whether it is

---

[3]Furthermore, the allegations in Plaintiff's Complaint are not actionable as they cannot be considered "severe and pervasive" as this standard has been applied by the 4th Circuit and other Federal Courts. *See Carter v. Ball*, 33 F.3d 450, 461–62 (4th Cir. 1994) (Conclusory statements, without specific support, cannot support an actionable claim for harassment).

physically threatening, and whether it unreasonably interferes with Plaintiff's work performance. A number of the facts Plaintiff alleged, such as being told to remove his garden gloves or being asked not to speak about politics, may have been offensive, but these situations are not physically threatening or severe. Furthermore, Plaintiff's work performance was not obstructed due to the alleged "hostile" working environment. Plaintiff stated several times that his performance was impeccable. Additionally, when Plaintiff was asked to take a performance test, which he alleges was "severe and pervasive conduct", he passed the performance test with ease. This example alone shows that his work performance was not hindered by the alleged "hostile work environment". Finally, the standard to establish hostile work environment requires that a reasonable person would consider the workplace to be hostile or abusive. There is no indication in the Complaint that any of the other employees found the work environment to be hostile. The interactions between Plaintiff and Defendant were nothing more than an employee disagreeing with his supervisor. Since Plaintiff has not alleged sufficient facts to establish that the alleged "hostile" conduct was made because of his age and was "severe or pervasive" in nature, Plaintiff's claims for hostile work environment will be <u>dismissed</u>.

**III. Intentional Infliction of Emotional Distress**

The elements required for the tort of intentional infliction of emotional distress (IIED) are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325 (1981). To support an IIED claim, the conduct alleged must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious and utterly intolerable in civilized society." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308 (1985).

In the case at bar, Plaintiff describes two instances to support his claim for intentional infliction of emotional distress. First, the Plaintiff alleges that Defendants confronted him about soliciting outside business at the library (Doc.1 at 8), issued a write up (*Id*. at 9), and did not provide documentation to support part-time employee personnel write-up policies when requested via email (*Id*.). The second instance describes an occasion where another employee told Plaintiff that "[she] didn't want to hear anything about time, fairness, affirmative action, or equal opportunity, and if [Plaintiff] didn't like it [he could] just hit the door." (Doc. 1 at 21). Neither of the two instances rise to the level of "extreme or outrageous conduct" that is needed to support a claim for IIED. Not only must the conduct go beyond all possible bounds of decency and be utterly intolerable in a civilized society, but the extreme and outrageous must be more than mere insults, indignities and threats. *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493–94 (1986). Plaintiffs are expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate or unkind. *Id.* Although Plaintiff's co-worker may have been inconsiderate when she chose to confront him in front of library patrons, this was simply the use of rough language, which does not rise to the level of extreme and outrageous conduct. Ultimately, there are no facts alleged that establish anything other than ordinary work practices.

Moreover, the facts alleged, describing the "severe emotional distress", are not sufficient to satisfy the final element of IIED. The term "severe emotional distress" means "any emotional or mental disorder, such as, neurosis, psychosis, chronic depressions, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized by

professionals trained to do so." *Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22 (1992). Courts have held that some degree of transient and trivial emotional distress is part of the price of living among people and only distress that is "so severe that no reasonable man could be expected to endure it" would satisfy this element. *Id.* The only "emotional distress" alleged by Plaintiff was humiliation, embarrassment, dizziness, and being close to tears. (Cmpl. at 21.) There is no indication that Plaintiff sought medical treatment for his "distress", received any medication for it, or was impaired in any long term way by the events.[4] Furthermore, humiliation, embarrassment, and being "close to tears" are commonplace in today's society and certainly do not rise to the level of severe emotional distress.[5] To allow this claim would open the door to any aggrieved employee whose feelings were hurt while at work. Since Plaintiff fails to allege facts sufficient to establish "extreme and outrageous conduct" or "severe emotional distress", Plaintiff's claim for IIED will be dismissed.

## CONCLUSION

**IT IS THEREFORE ORDERED**, for the foregoing reasons, that Defendants' Partial Motion to Dismiss (Doc. 7) seeking dismissal of Plaintiff's claims for discrimination under Title VII, ADEA, hostile work environment, and intentional infliction of emotional distress is hereby

---

[4] *See Id.* at 85 (holding that the plaintiff did not suffer from severe emotional distress because she did not go see a doctor, did not take any medication, and did not miss work as a result of the alleged "severe emotional distress" she suffered).

[5] *See Id.* (holding that being continually upset and frequently crying were not sufficient to establish "severe emotional distress").

11

**GRANTED.**[6]

Signed: August 21, 2012

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge

---

[6] Plaintiff's ADA Claim was not subject to Defendants' Motion to Dismiss and may proceed.